**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Teresa Payzant,

                Plaintiff,

                                **MEMORANDUM OPINION**
       v.                       **AND ORDER**

UNUM Life Insurance Company          Civil No. 04-4216 ADM/JSM
of America,

                Defendant.

---

Robert E. Kuderer, Esq. and Stacey A. Nilsen, Esq., Johnson & Condon, P.A., Minneapolis, MN, argued for and on behalf of Plaintiff Teresa Payzant.

Terrance J. Wagener, Esq., Krass Monroe, P.A., Minneapolis, MN, argued for and on behalf of Defendant UNUM Life Insurance Company of America.

---

## I. INTRODUCTION

On October 5, 2005, oral argument before the undersigned United States District Judge was heard on Plaintiff Teresa Payzant's ("Plaintiff" or "Payzant") Motion for Summary Judgment [Docket No. 25] and Defendant UNUM Life Insurance Company of America's ("Defendant" or "UNUM") Motion to Dismiss and for Summary Judgment [Docket No. 43].  In her Amended Complaint [Docket No. 6], Plaintiff alleges claims for enforcement of contract, breach of fiduciary duty, and attorney's fees under the Employee Retirement Income Security Act ("ERISA"), based on UNUM's denial of long term disability benefits.

For the reasons set forth herein, Plaintiff's Motion for Summary Judgment is granted. Defendant's Motion to Dismiss and for Summary Judgment is granted in part and denied in part.

## II. BACKGROUND

Plaintiff Teresa Payzant is a forty-five year old woman residing in Red Wing, Minnesota.

Howard Aff. [Docket No. 47] Ex. A at UACL00015.  Payzant was employed by Norwood

Promotional Products, Inc. ("Norwood") from November 13, 2000, until February 6, 2003, as an

accounting clerk.  Id. at UACL00015, 00017, 00267, 00275.  Norwood provides its employees,

including Payzant, with short term and long term disability insurance coverage through

Defendant UNUM.  Howard Aff. Ex. B.

On October 28, 2002, Payzant applied for short term disability benefits based on

impending surgeries.  Howard Aff. Ex. A at UACL00015.  Payzant initially anticipated missing

work for at least one month while she recovered from a hysterectomy and right ankle surgery to

fix torn ligaments.  Id.  UNUM wrote to Payzant on November 12, 2002 to inform her that she

would be eligible for short term benefits from November 4, 2002 until December 8, 2002.  Id. at

UACL00049.  Payzant developed some post-surgery complications which prolonged the surgery

recovery period.  Id. at UACL00084-00085.  UNUM extended Payzant's short term disability

benefits on three occasions, and ultimately for the duration of her employer's twelve week plan,

with benefits ending on January 27, 2003.  Id. at UACL00020, 00041, 00044.

At the same time that Payzant was recovering from her surgeries, she was also suffering

from fibromyalgia.  Fibromyalgia is "a type of muscular or soft-tissue rheumatism that affects

principally muscles and their attachment to bones."  Pralutsky v. Metro. Life Ins. Co., 316 F.

Supp. 2d 840, 842 (8th Cir. 2004), citing Lang v. Long-Term Disability Plan of Sponsor Applied

Remote Tech. Inc., 125 F.3d 794, 796 (9th Cir. 1997).

> Also known as fibrositis, fibromyalgia is a common but elusive and mysterious disease,
> much like chronic fatigue syndrome, with which it shares a number of features.  Its cause
> or causes are unknown, there is no cure, and, of greatest importance to disability law, its
> symptoms are entirely subjective.  There are no laboratory tests for the presence or
> severity of fibromyalgia.

Pralutsky, 316 F. Supp. 2d at 842, citing Sarchet v. Chater, 78 F.3d 305, 306-307 (7th Cir. 1996).

> People with fibromyalgia have generalized pain, achiness, and stiffness all over their bodies . . . .  The other main characteristic of fibromyalgia is chronic fatigue, probably related to disturbed sleep patterns.  Sufferers often complain of waking up as tired as they were when they went to sleep, having continued fatigue throughout the day.

Morgan v. UNUM Life Ins. Co. of America, No. 01-1796, 2002 WL 31095391, at *1 n.1 (D.

Minn. Sept. 16, 2002), quoting Simeon Margolis, M.D., Ph.D. & John A. Flynn, M.D., *The

Johns Hopkins White Papers* 89 (1995).

Payzant was first diagnosed with fibromyalgia in March 2001 by Dr. Anne Minenko,

Assistant Professor of Medicine in the Rheumatology Section at the University of Minnesota.

Howard Aff. Ex. A at UACL00300.  Payzant was referred to Dr. Minenko after Dr. Kirk

Prodzinski, her family practice physician in Red Wing, suspected Payzant might have some form

of fibromyalgia.  Id. at UACL00038.  Dr. Prodzinski first examined Payzant on January 29,

2001, and then continued to see Payzant as a patient at least every couple of months thereafter.

Id. at UACL00027-00038.  A review of Dr. Prodzinski's notes over an almost three year period

reveal a persistent diagnosis of fibromyalgia as well as a continual failure of all forms of

treatment, including medication, exercise, and therapy, to improve Payzant's condition.  Id.

Payzant's pain as a result of fibromyalgia appeared to worsen after her surgeries.[1]  See id.

at UACL00027.  After an examination on January 23, 2003, Dr. Prodzinski wrote the following

assessment:

> Fibromyalgia.  I think this is the base of all her problems.  She certainly has been seeing me for quite some time for this and we have gone through several specialists,

---

[1] Payzant asserts that fibromyalgia patients are at higher risk of developing chronic pain after surgery.  W. A. Macrae, *Chronic Pain After Surgery*, British Journal of Anaesthesia 87:1 88-98 at p. 96 (2001), available at bja.oxfordjournals.org/cgi/reprint/87/1/88.

medications, etc. without much luck.  Really hope that the Mayo Pain Clinic and
Fibromyalgia clinic will benefit her greatly.  I think a program like that is very
appropriate and needed for this patient as she has suffered greatly.

Id. at UACL00028.  On a February 10, 2003 visit, Payzant described her pain as "constant,

aching, throbbing, shooting, stabbing, sharp, tender, burning, exhausting, penetrating, nagging,

numb, miserable, gnawing, tiring and unbearable."  Id. at UACL00027.  On a scale of one to ten,

she rated her pain a ten.  Id.  Payzant attended the Mayo Comprehensive Pain Rehabilitation

Center ("MCPRC") program from February 26, 2003 to March 19, 2003.  Id. at UACL00221-

00226.  At the program, Payzant was taught pain management strategies.  Id.  While Payzant did

exhibit some short-term improvement after her participation in the MCPRC program, her

symptoms worsened shortly after she returned home.  See id. at UACL00191, 00300.

On March 3, 2003, Payzant's claim was forwarded for long term disability

consideration.[2]  Id. at UACL00020.  Payzant's long term disability plan (the "Plan") insured by

UNUM defines disability as follows:

> You are disabled when UNUM determines that: you are **limited** from performing the
> **material and substantial duties** of your regular occupation due to your **sickness** or
> **injury**; and you have a 20% or more loss in your **indexed monthly earnings** due to the
> same sickness or injury.  After 24 months of payments, you are disabled when UNUM
> determines that due to the same sickness or injury, you are unable to perform the duties
> of any **gainful occupation** for which you are reasonably fitted by education, training or
> experience . . . .  We may require you to be examined by a physician, other medical
> practitioner and/or vocational expert of our choice.  UNUM will pay for this
> examination.  We can require an examination as often as it is reasonable to do so.  We
> may also require you to be interviewed by an authorized UNUM representative.

Kuderer Aff. [Docket No. 51] Ex. A at 13 (emphasis in original).  The Plan states the following

---

[2] On March 5, 2003, Norwood wrote Payzant a letter, informing her that they were "no
longer holding your job for you as of February 6" as a result of her inability to work, but that
"you may reapply for employment with Norwood when you are ready and able to return to
work."  Id. at UACL00275.

4

with respect to proof of claim:

> Your proof of claim, provided at your expense, must show: that you are under the **regular care** of a **physician**; the appropriate documentation of your monthly earnings; the date your disability began; the cause of your disability; the extent of your disability, including restrictions and limitations preventing you from performing your regular occupation; and the name and address of any **hospital or institution** where you received treatment, including all attending physicians.

Id. at 8 (emphasis in original).  Payzant's claim was originally assigned to UNUM customer care specialist Eric Waddle ("Waddle").  Waddle spoke with Payzant regarding her fibromyalgia issues and ordered Payzant's medical records for review.[3]  Howard Aff. Ex. A at UACL00126-00127, 00131.  A clinical review of Payzant's medical records was conducted on May 21, 2003 by UNUM clinician Nurse Becky Wallin, who was asked to determine, among other things, Payzant's primary medical diagnosis.[4]  Id. at UACL00197-00199.  Nurse Wallin concluded that "Dr. Prodzinski has placed the claimant at a no work status for 3 months for her fibromyalgia symptoms, which appears to [be] the primary problem limiting her functional abilities.  The R&Ls [restrictions and limitations] provided by Dr. Prodzinski do not appear supported from an orthopedic standpoint."  Id. at UACL00198.  Nurse Wallin then forwarded the claim for review

---

[3] For reasons that are unclear, not all of Payzant's medical records were initially sent to UNUM.  From the beginning, UNUM's clinicians had an incomplete set of records to review, and each time UNUM denied Payzant's claim, Payzant sent additional medical records to support her fibromyalgia diagnosis.  Payzant's claim was first referred for clinical review on February 21, 2003.  Id. at UACL00022.  It is unclear from the record if it was referred at that time for a determination as to whether Payzant's short term disability benefits should be extended, or whether it was the first phase of the long term disability review process.  Payzant's records were reviewed by Nurse Kerry Chambers, who indicated that the current records on file were insufficient as they did not "indicate work status, provide R&L's or medical information to support the claimant's inability to perform her sedentary job duties."  Id.

[4] It appears from a review of the record as though there was some confusion at UNUM initially as to whether Payzant was applying for long term disability due to her hysterectomy and ankle surgery or her fibromyalgia.

to Dr. George G. Fluter, who concluded that "the main complaint appears to be widespread muscle pain, possibly due to fibromyalgia but the basis for this diagnostic label is not clearly documented in the available records."  <u>Id.</u> at UACL00204.

After the first round of clinical reviews revealed fibromyalgia as the primary focus of the claim, Waddle sent Payzant's records to be clinically reviewed a second time.  This time, Waddle directed the clinicians to conduct their records review with the following questions in mind: "1) Is there objective evidence in the file supporting a fibromyalgia diagnosis?  2) Are there restrictions and limitations supported related to the diagnosis of fibromyalgia?  If so, what is the duration?"  <u>Id.</u> at UACL00210.  After examining the records, Nurse Janet Shepard wrote:

> FM is a diagnosis of exclusion in that objective medical testing and comprehensive clinical exam findings demonstrate no physical etiology or specific pathological process to explain the multitude of subjective symptoms reported by these patients.  Due to the absence of abnormal clinical indicators, a diagnosis of FM is established based solely on a patients subjective reports that may range from severe diffuse body pain to cognitive difficulties . . . . While I do not doubt Ms. Payzant most likely does experience a level of discomfort—as many of us do at times—the recommendation for disability appears based primarily on her perceived level of pain and decreased functionality, rather than clear substantial clinical findings to support functional deficit.

<u>Id.</u> at UACL00212.  Shepard then forwarded the records to Dr. Suzy Vergot for further review. Dr. Vergot wrote "[w]ithout physical findings of functional inability, tissue changes, or pathological findings impairment would not be supported.  Fibromyalgia is not a progressive condition because it does not cause change in muscle tissue.  Activity would not create exacerbation.  Activity may be uncomfortable but is safe."  <u>Id.</u> at UACL00243.

On July 2, 2003, Waddle spoke with Joe Payzant, Teresa's husband, and told him Payzant's claim would likely be denied.  <u>Id.</u> at UACL00247.  "We are not saying that his wife does not have these symptoms, but that it is not measurable and is regarded as a self reported

6

type issue." Id.  At the end of their phone conversation, Mr. Payzant urged Waddle to have the

UNUM doctor call Dr. Prodzinski to discuss Payzant's condition.  Id.  Waddle attempted to call

Dr. Prodzinski that same day, but learned Dr. Prodzinski would be out of the office until July 7,

2003.  On July 3, 2003, rather than awaiting Dr. Prodzinski return to the office, UNUM

employee Cheryl Stowell directed Waddle to "please close claim as medical doesn't support

impairment from work activities.  To wait for her family practice doctor to contact us on Monday

will not be of help without objective testing as communicated in the medical review."  Id. at

UACL00249.  Waddle then marked Payzant's claim as "closed." Id. at UACL00250.

Payzant appealed the denial, and submitted additional documents to UNUM.  Among the

documents submitted to UNUM was a letter from Norwood to Payzant regarding Payzant's

termination from her job, which stated:

> As your physical condition deteriorated, you simply were not able to work a full-time or
> part-time job.  In discussions with you on what we could do to accommodate your needs,
> we all agreed there was no reasonable accommodation that could be made that would
> enable you to do your work.

Id. at UACL00276.  The documents also included material from Dr. Prodzinski, including a

letter stating "I have been a physician seeing Ms. Payzant for over 2 years . . . it is my opinion

that this patient cannot tolerate even short periods of either sitting, standing or repetitive work

and that it would adversely effect her health, both mentally and physically" and four separate

"report of work ability" forms, each documenting Payzant's continual suffering from

fibromyalgia and extending her time off work, with the last form extending her time off work

until March 12, 2004.  Id. at UACL00278-00282.

On January 19, 2004, UNUM employee Deborah Vaughn wrote Payzant, informing her

that the denial decision had been upheld, the administrative review was complete, and Payzant's

7

next step would be to file civil suit.  Id. at UACL00294.  Payzant chose instead to send more

documentation to UNUM.  A patient form from Dr. Minenko stated:

> Disability status.  I am not clear on what grounds one can decide whether one is disabled
> other than documentation by self report which she has provided and having failed
> attempted therapies and interventions by physical therapy, Physical Medicine and
> Rehabilitation, Pain Clinic and having ruled out other serious reasons, example
> radiculopathy, for her complaints.  In terms of deciding whether she is disabled I prefer
> to base this on function rather than pain levels and defer this assessment and
> documentation thereof to either Physical Medicine Rehab or a physical therapist that is
> skilled in disability evaluation based on level of function, otherwise I rely only on what
> self report she has provided me.

Id. at UACL00301-00302.  Dr. Prodzinski wrote on December 5, 2003, that "at this point I really

don't think she is eligible to work.  I am awaiting her disability company to set up a functional

capacity evaluation."  Id. at UACL00303.  On February 17, 2004, he wrote "she continues to

work for disability based on her fibromyalgia and I still believe she needs a functional capacity

test to evaluate her full potential.  From my standpoint, she is not physically or mentally able to

tolerate constant work situations."  Id. at UACL00304.

UNUM treated her additional documentation as a "second appeal," and sent her records

to be clinically reviewed yet again.  UNUM did not order a functional capacity evaluation

("FCE").  This time, Nurse Kim Brothers reported that she could not determine Payzant's

functional status based on the medical evidence in the file, and that while Payzant's doctors

supported her inability to work, they also noted that she was in need of a FCE.  Id. at

UACL00317.  Nurse Brothers forwarded the records on for review to Dr. Vergot, who wrote

"[t]he claimant's PCP has noted the claimant's need for a FCE, suggesting the claimant has work

capacity.  The physical findings of the record would support functional capacity at the sedentary

to light level."  Id. at UACL00320.  On April 8, 2004, UNUM sent a letter to Payzant, again

8

upholding the denial of benefits.  Id. at UACL00323-00324.  Payzant filed this lawsuit to obtain

long term disability benefits.[5]

### III. DISCUSSION

**A.      Standard of Review for Motion to Dismiss and Summary Judgment**

Rule 12 of the Federal Rules of Civil Procedure provides that a party may move to

dismiss a complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P.

12(b)(6).  In considering a motion to dismiss, the pleadings are construed in the light most

favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true.

Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994); Ossman v. Diana Corp., 825 F. Supp. 870,

879-80 (D. Minn. 1993).  Any ambiguities concerning the sufficiency of the claims must be

resolved in favor of the nonmoving party.  Ossman, 825 F. Supp. at 880.  "A motion to dismiss

should be granted as a practical matter . . . only in the unusual case in which the plaintiff

includes allegations that show on the face of the complaint that there is some insuperable bar to

relief."  Frey v. City of Herculaneum, 44 F.3d 667, 671 (8th Cir. 1995).

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see Matsushita Elec.

---

[5] Payzant also applied for Social Security disability benefits.  On May 27, 2005, an administrative law judge ("ALJ") found Payzant to be eligible for benefits, determining that "by reason of the claimant's chronic pain, fatigue and depression, she lacks the persistence and pace necessary to engage in full-time, competitive employment on a consistent and sustained basis." Kuderer Aff. Ex. [Docket No. 81].   The ALJ also determined that because evidence showed her condition could improve with treatment, her claim should be reevaluated in two years.  Id.

Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party.  Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995).  The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial."  Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

**B.      Breach of Fiduciary Duty Claim**

In her Complaint, Plaintiff has alleged claims for both enforcement of contract[6] and breach of fiduciary duty under ERISA.[7]  Compl. at 4-5.  UNUM argues that Payzant's breach of fiduciary duty claim is redundant of her claim for benefits due and therefore should be dismissed.  Payzant responds that the breach of fiduciary duty claim is not redundant because it seeks injunctive relief—an order prohibiting UNUM from imposing an objective evidence standard of proof on fibromyalgia claimants.

The Eighth Circuit has held that where a plaintiff is provided adequate relief by the right to bring a claim for benefits under 29 U.S.C. § 1132(a)(1)(B), the plaintiff does not have a cause of action to seek the same benefits in the form of equitable relief under § 1132(a)(3)(B).  Conley

---

[6] UNUM moved for Payzant's "contract" claim to be dismissed because ERISA preempts state law breach of contract claims.  Payzant responds her claim is "enforcement of contract" under ERISA for past due and owing long term disability benefits, along with reinstatement of benefits, prejudgment interest, costs, and attorney's fees.  Payzant has not claimed a breach of contract under state law.

[7] While Payzant does not precisely identify the ERISA sections under which she seeks to proceed, it appears that she seeks monetary damages under 29 U.S.C. § 1132(a)(1)(B) and an injunction under § 1132(a)(3)(B).

v. Pitney Bowes, 176 F.3d 1044, 1047 (8th Cir. 1999). To the extent that Payzant seeks monetary damages under her breach of fiduciary duty claim, the claim is dismissed as redundant. In addition, the Court concludes that § 1132(a)(1)(B) provides Payzant with adequate and appropriate relief and therefore additional relief in the form of an injunction based on a breach of fiduciary duty is not appropriate or necessary. See Varity Corp. v. Howe, 516 U.S. 489, 512 (1996); Forsyth v. Humana, Inc., 114 F.3d 1467, 1474-75 (4th Cir. 1997); Tolson v. Avondale Indus., Inc., 141 F.3d 604, 610 (5th Cir. 1998); Wilkins v. Baptist Healthcare Sys., Inc., 150 F.3d 609, 615 (6th Cir. 1998). Payzant's breach of fiduciary duty claim is dismissed.

## C.   Denial of Benefits Determination

ERISA provides a plan participant with the right "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). The Supreme Court has held that when a plan gives an administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan, an administrator's decision is to be reviewed for an abuse of discretion. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); Woo v. Deluxe Corp., 144 F.3d 1157, 1160 (8th Cir. 1998). However, the Eighth Circuit applies a less deferential, sliding scale standard of review when the plaintiff has presented "material, probative evidence demonstrating that 1) a palpable conflict of interest or a serious procedural irregularity existed, which 2) caused a serious breach of the plan administrator's fiduciary duty." Woo, 144 F.3d at 1160. Here, there is no dispute that UNUM had discretionary authority under the terms of the plan to deny Payzant benefits. Kuderer Aff. Ex. A at 31. Therefore, the analysis turns to whether the less deferential standard should be applied.

1.      **Palpable Conflict of Interest**

The Eighth Circuit has recognized that when the insurer is also the plan administrator,

"something akin to a rebuttable presumption of a palpable conflict of interest" exists.  Schatz v.

Mutual of Omaha Ins. Co., 220 F.3d 944, 947-48 (8th Cir. 2000).  "Indicia of bias can be negated

by 'ameliorating circumstances' such as 'equally compelling long-term business concerns' that

militate against improperly denying benefits despite the dual role."  Id. at 948, citing Barnhart v.

UNUM Life Ins. Co., 179 F.3d 583, 588 (8th Cir. 1999).  However, the Eighth Circuit has also

stated that "not every funding conflict of interest . . . warrants heightened review because ERISA

itself contemplates the use of fiduciaries who might not be entirely neutral," Tillery v. Hoffman

Enclosures, Inc., 280 F.3d 1192, 1197 (8th Cir. 2002), and "it is wrong to assume a financial

conflict of interest from the fact that a plan administrator is also the insurer."  McGarrah v.

Hartford Life Ins. Co., 234 F.3d 1026, 1030 (8th Cir. 2000).

The Eighth Circuit has not definitively determined whether the plaintiff has the burden of

producing actual evidence of a financial conflict, or whether the defendant, after the plaintiff has

alleged that the defendant is both the insurer and the administrator, has the burden of producing

evidence to rebut the presumption of conflict of interest.  Compare McGarrah, 234 F.3d at 1030,

with Schatz, 220 F.3d at 947-48, and Phillips-Foster v. UNUM Life Ins. Co. of America, 302

F.3d 785, 795 (8th Cir. 2002), and Torres v. UNUM Life Ins. Co. of America, 405 F.3d 670, 678

(8th Cir. 2005).  In this case, Plaintiff has produced no evidence of a conflict of interest that

influenced UNUM's decision to deny benefits[8] and Defendant has produced no evidence to rebut

---

[8] Payzant argues that UNUM operated under a palpable conflict of interest because it
would ultimately recognize a direct savings of revenue by denying participants' claims and it
"wore too many conflicting hats," including 1) writing the Plan and the Plan Summary

Plaintiff's bare assertions of a conflict.  However, it is unnecessary to resolve this issue, as the first prong of the <u>Woo</u> test can also be satisfied by the existence of a serious procedural irregularity.

### 2.     Serious Procedural Irregularity

Payzant argues that UNUM committed serious procedural irregularities by 1) refusing to credit the medical evidence submitted by Payzant as legally sufficient evidence of disability, 2) failing to consider the opinions of Payzant's treating physicians, 3) failing to consult any outside expert, 4) failing to obtain an independent medical examination ("IME") or functional capacities evaluation ("FCE"), and 5) requiring objective medical evidence of her fibromyalgia.  UNUM responds that it is not required to give any special weight to the opinions of her treating physicians, an independent medical examination was not required, and UNUM based its denial of Plaintiff's claim on more than just a lack of objective evidence.

### a.     Treating Physicians' Opinions

The Supreme Court has held that ERISA plan administrators are not required to give special deference to the opinions of treating physicians.  <u>Black & Decker Disability Plan v. Nord</u>, 538 U.S. 822, 825 (2003).  In this case, Plaintiff's medical records were reviewed by several UNUM in-house doctors and nurses.  While it might be preferable for insurance company doctors to examine claimants in person, they are not usually required to do so, and UNUM need not give any special deference to the conclusions of Payzant's treating physicians over its own in-house reviewing physicians.

---

Description, 2) making the benefit determinations, 3) examining the appeals, and 4) acting as the insurer of the Plan.

### b.     IME or FCE

While the Eighth Circuit does not always require insurance companies to obtain an independent medical examination ("IME") or send claimants to be examined by a specialist,[9] it has required such measures when claimants present medical evidence of an "uncommon disease."  Compare Heaser v. The Toro Co., 247 F.3d 826, 833-34 (8th Cir. 2001), with Woo, 144 F.3d at 1161.  In Woo, the court found a serious procedural irregularity when the defendant failed to have the plaintiff's claim reviewed by an expert and instead relied on an in-house consultant's review of the plaintiff's claim.  Woo, 144 F.3d at 1161.  The plaintiff had presented medical evidence of an uncommon disease—scleroderma—and the opinions of two treating physicians that the plaintiff was disabled.  Id.  By contrast, in Heaser, the defendant did not commit a procedural irregularity by failing to send a fibromyalgia claimant to a specialist because the defendant directly contacted the plaintiff's own physician, who informed the defendant that he no longer considered the plaintiff disabled, and an in-house consultant specializing in pulmonary medicine reviewed the plaintiff's records.  247 F.3d at 833; see also Clapp v. Citibank, 262 F.3d 820, 828 (8th Cir. 2001).

---

[9] At oral argument, the parties were asked to submit supplemental briefing on whether the Court may 1) order a FCE or 2) remand Payzant's claim to the UNUM administrative process for a FCE.  Both parties oppose conducting a FCE at this late date.  UNUM argues gathering additional evidence now effectively abrogates the Plaintiff's burden to provide proof of claim and that courts are not to "become substitute claim administrators" in the ERISA context. Payzant argues that remand would be ineffective because UNUM has already demonstrated that it would not consider additional functional findings to be sufficient *objective* proof of claim. Both parties agree that a current FCE would shed no light on the reasonableness of UNUM's benefits determination in 2003.  While a FCE conducted by an IME in 2003 may have provided extremely helpful information to UNUM in making its benefits determination about a relatively subjective illness, the Court finds that a FCE conducted today would not inform the reasonableness of UNUM's previous benefits decision.

The facts of this case are more similar to Woo than Heaser. In this case, as in Woo, UNUM denied benefits based on in-house reviews of Payzant's medical diagnosis of fibromyalgia, an "uncommon disease." Unlike in Heaser, UNUM failed to speak with Payzant's primary treating doctor, despite his eagerness to explain to UNUM why he considered Payzant to be "unable to work." Howard Aff. Ex. A at UACL00278. While Payzant's two primary doctors opined about the need for a functional evaluation, the evaluation was sought to clarify the extent of Payzant's disability, given the subjective nature of the disease. Payzant's physicians did not question the seriousness of her condition. See id. at UACL00301-00304. Therefore, UNUM's failure to obtain an IME or FCE to evaluate Payzant's subjective illness when both Payzant's treating doctors, including a rheumatologist, requested a FCE to complete the disability determination, is a procedural irregularity.

### c.      Objective Evidence

In Pralutsky v. Metro. Life Ins. Co., the plaintiff also suffered from fibromyalgia and was denied long term disability benefits, despite documentation from her treating physician that she was totally disabled, based on the plan administrator's conclusion that her impairment was not supported by objective medical findings. 316 F. Supp. 2d 840, 842-44 (D. Minn. 2004). Judge Richard Kyle reviewed the Eighth Circuit's case law to "determine whether the Eighth Circuit has established a blanket rule on objective medical evidence in ERISA cases." Id. at 847. Judge Kyle concluded that the Eighth Circuit has not taken a consistent approach to subjective and objective evidence in the context of ERISA and instead engages in a case-specific analysis with regard to the particular claims and policy language before it. Id. at 848; compare House v. The Paul Revere Life Ins. Co., 241 F.3d 1045 (8th Cir. 2001), and Walke v. Group Long Term

Disability Ins., 256 F.3d 835 (8th Cir. 2001), with Coker v. Metro. Life Ins. Co., 281 F.3d 793

(8th Cir. 2002), and McGee v. Reliance Standard Life Ins. Co., 360 F.3d 921 (8th Cir. 2004).

Judge Kyle found a serious procedural irregularity occurred by requiring objective

evidence in the case of a largely subjective disease, despite the absence of any language in the

Plan specifically requiring objective evidence.  Pralutsky, 316 F. Supp. 2d at 849-51.  Since

Pralutsky was decided, the Eighth Circuit held in accord with McGee, and found that even

without any specific Plan language, "an administrator may deny benefits based on a lack of

objective evidence of disability."  Hunt v. Metro. Life Ins. Co., 425 F.3d 489, 491 (8th Cir.

2005) (Bye, J., dissenting).

Hunt is factually distinguishable from the present case.  Here, Payzant presented

evidence of her fibromyalgia diagnosis through medical records from her family practice doctor,

a rheumatologist at the University of Minnesota, and the Mayo Comprehensive Pain

Rehabilitation Center.  See Howard Aff. Ex. A at UACL00027-00038, 00221-00226, 00278-

00282, 00300-00304.  Dr. Prodzinski consistently documented Payzant's inability to work, and

her employer released her from her job after determining that no reasonable accommodation

would enable her to continue to work.  Id. at UACL00276.  While Dr. Prodzinski did state that

he believed Payzant "need[ed] a functional capacity test to evaluate her full potential," the

statement was made in the context of documenting Payzant's inability to work, and not, as

Defendant suggests, because Dr. Prodzinski questioned whether Payzant was disabled.  Id. at

UACL00304.  Also, while Dr. Minenko, a University of Minnesota Rheumatologist, announced

her preference to have Payzant's disability status determined by either "Physical Medicine

Rehab or a physical therapist," she did so in the context of her uncertainty "on what grounds one

can decide whether one is disabled other than documentation by self report" and that attempted therapies and interventions had failed.  Id. at UACL00301-00302.  Payzant also submitted records documenting her 18/18 positive points for fibromyalgia, the most objective way that fibromyalgia can be diagnosed.  Id. at UACL00300.[10]

While Defendant asserts now that its disability determination was based on factors other than just a lack of objective evidence, the record suggests otherwise.  When UNUM submitted Payzant's records to its reviewing doctors and nurses, they were asked to determine if there was "objective evidence in the file supporting a fibromyalgia diagnosis."  Id. at UACL00210.  UNUM's nurse noted that fibromyalgia is diagnosed "based solely on a patients subjective reports" and that "the recommendation for disability appears based primarily on her perceived level of pain."  Id. at UACL00212.  UNUM's doctor noted that "[w]ithout physical findings of functional inability, tissue changes, or pathological findings impairment would not be supported."  Id. at UACL00243.  UNUM then denied Payzant's claim, explaining to her husband that "[w]e are not saying that his wife does not have these symptoms, but that it is not measurable and is regarded as a self reported type issue."  Id.  When Dr. Prodzinski attempted to call UNUM to explain Payzant's disability diagnosis, UNUM employee Cheryl Stowell directed Customer Care Specialist Eric Waddle to "please close claim as medical doesn't support impairment from work activities.  To wait for her family practice doctor to contact us on Monday will not be of help without objective testing as communicated in the medical review."  Id. at

---

[10] A patient is diagnosed with fibromyalgia in part based on a doctor's palpations of eighteen fixed points on the body that when pressed firmly cause the patient to flinch.  See Sarchet v. Chater, 78 F.3d 305, 306 (7th Cir. 1996).  "[T]he rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia."  Id.

UACL00250.

The record establishes UNUM denied Payzant's claim due to a lack of objective evidence documenting her disability from fibromyalgia, despite the absence of any Plan language requiring claimants to provide objective evidence. The Plan merely requires a claimant to submit proof of claim, and lists several factors that the claimant must prove, but does not require the claimant to provide objective evidence of disability. Kuderer Aff. Ex. A at 8. It was a procedural irregularity for UNUM to require objective evidence of the presence of what current medicine regards as a subjective disease. "This is especially true where, as here, the claimant's subjective complaints are not contradicted by or inconsistent with other record evidence." Hunt, 425 F.3d at 492 (Bye, J., dissenting), citing Coker, 281 F.3d at 799. Therefore, the first prong of the Woo test is satisfied.

### 3.     Serious Breach of Fiduciary Duty

The second prong of the Woo test applicable here requires determining whether the serious procedural irregularity caused a serious breach of the plan administrator's fiduciary duty. Woo, 144 F.3d at 1160. To satisfy the second part of the test, Payzant must show that the "procedural irregularity has 'some connection to the substantive decision reached.'" Id. at 1161. The Eighth Circuit has also noted that "the second prong presents a considerable hurdle for plaintiffs" and "[t]he evidence offered by the claimant must give rise to 'serious doubt as to whether the result reached was the product of an arbitrary decision or the plan administrator's whim.'" Schatz, 220 F.3d at 948.

Payzant satisfies the second prong of the Woo test. As discussed above, UNUM required objective evidence from Payzant to document a largely subjective disease despite the absence of

any Plan language requiring objective evidence.  UNUM failed to set up a FCE for Payzant,

which arguably may have produced the most objective evidence possible of Payzant's disability

and was recommended by two treating physicians.  Payzant's inability to provide objective

evidence was the reason that UNUM denied Payzant's claim.  Therefore, the procedural

irregularity was the direct cause of the substantive decision reached, and the evidence is

sufficient to give rise to serious doubt as to whether the denial of Payzant's claim was the

product of an arbitrary decision.  Because Payzant has satisfied the Woo test, the less deferential,

sliding scale standard of review is applied.[11]

**D.      Application of the Sliding Scale Standard of Review**

Under the less deferential, sliding scale standard of review, "the evidence supporting the

plan administrator's decision must increase in proportion to the seriousness of the conflict or

procedural irregularity."  Woo, 144 F.3d at 1162.  Egregious conduct results in a requirement

that "the record contain substantial evidence bordering on a preponderance to uphold [UNUM's]

decision."  Id.  In Pralutsky, Judge Kyle applied the "substantial evidence bordering on a

preponderance" standard after the defendant denied plaintiff's long term disability claim when

plaintiff failed to provide objective evidence of disability.  316 F. Supp. 2d at 851.

> Without the requirement of objective medical evidence, the record contains nothing more
> than scraps to offset the evidence presented by Pralutsky.  While such a requirement may
> not be arbitrary and capricious in every instance, in the face of an "elusive and
> mysterious" disease like fibromyalgia whose symptoms are entirely subjective, it is
> arbitrary and capricious here.

Id. at 853.  The Defendant's similar approach in this case warrants the requirement of substantial

---

[11] Because the less deferential, sliding scale standard of review applies, there is no need
to analyze UNUM's denial of benefits under the abuse of discretion standard.

evidence bordering on a preponderance to support the denial of benefits, and the Court finds that the Defendant has failed to meet that standard.  Payzant provided UNUM with medical records from Dr. Prodzinski, Dr. Minenko, and the MCPRC, all documenting her fibromyalgia, as well as ample documentation from Dr. Prodzinski of inability to work.  UNUM did not obtain a FCE or IME and instead relied on its reviewing doctors' determinations that her disability was not supported due to a lack of objective evidence.  Other than the reviewing doctors' determinations, there is no evidence in the record contradicting Payzant's claim or refuting the extent to which she suffers from fibromyalgia.  See Hunt, 425 F.3d at 492 (Bye, J., dissenting), citing Coker, 281 F.3d at 799.  Because UNUM relied on a lack of objective evidence to make its benefits determination about a largely subjective illness, the denial of benefits is not supported by substantial evidence and must be overturned.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion to Dismiss [Docket No. 43] with respect to Plaintiff's breach of fiduciary duty claim is **GRANTED**;

2. Defendant's Motion for Summary Judgment [Docket No. 43] is **DENIED**;

3. Plaintiff's Motion for Summary Judgment [Docket No. 25] is **GRANTED**; and

4. Plaintiff's request for attorney's fees is **GRANTED**.  If the parties are unable to agree on an amount of attorney's fees, the parties should submit affidavits and supporting memoranda to the Court, no later than December 31, 2005.

BY THE COURT:


_____s/Ann D. Montgomery_____
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  December 2, 2005.